### In re DAIRY MARKETING ASS'N OF FT. WAYNE, Inc.

(District Court, D. Indiana, Ft. Wayne Division. November 16, 1925.)

No. 995.

1. **Bankruptcy ⊜⇒72(1)—Act construed strictly against amenability thereto of corporation.**

Bankruptcy Act (Comp. St. §§ 9585–9656) is to be construed strictly as to amenability of corporations thereto, and does not include any not clearly within its enumerated classes.

2. **Bankruptcy ⊜⇒72(1)—Amenability of corporation dependent on chief business.**

Amenability to Bankruptcy Act (Comp. St. §§ 9585–9656) of a corporation engaged in more than one distinctive line of business, only one of which. would subject it to the act, depends on that business which, under all the facts and circumstances, constitutes its chief or principal pursuit.

3. **Bankruptcy ⊜⇒72(3)—Indiana incorporated co-operative dairy marketing association held not subject to involuntary bankruptcy proceeding as "moneyed, business, or commercial corporation."**

Co-operative dairy marketing association, incorporated under Acts Ind. 1925, c. 20, *held*, in view of its charter and the provisions of such act, not within Bankruptcy Act, § 4, as amended by Act June 25, 1910, § 4 (Comp. St. § 9588), making subject to involuntary bankruptcy only "moneyed, business, or commercial" corporations; those words including only corporations engaged in enterprises for profit.

In Bankruptcy. Petition filed by members of the Dairy Marketing Association of Ft. Wayne, Inc., to have it declared a bankrupt. Petition dismissed.

W. N. Ballou and E. V. Emrick, both of Ft. Wayne, Ind., for petitioners.

Hoffman, Shoaff & Hoffman, of Ft. Wayne, Ind., and A. D. Waldaurer, of Memphis, Tenn., for defendants.

SLICK, District Judge. This is a suit by certain persons, members of defendant association, to have defendant declared a bankrupt. Defendant, among other defenses, denies that it is subject to or amenable to the bankruptcy laws of the United States relating to involuntary bankruptcy.

The facts, so far as may be necessary to a decision of this question, are stipulated by the parties and briefly are as follows: Defendant, Dairy Marketing Association of Ft. Wayne, Inc., is incorporated under an act of the Legislature of the state of Indiana approved February 23, 1925 (Acts 1925, c. 20), and entitled "An act to authorize and provide for the incorporation, organization, management and control of nonprofit, co-operative associations, to prescribe and define their powers, purposes, duties, liabilities and privileges, and to provide for the enforcement thereof, and declaring an emergency."

It is stipulated in this case that, at the time of the filing of the petition herein for involuntary bankruptcy, defendant association was engaged in co-operative marketing of dairy products, in accordance with the Co-operative Marketing Act of the state of Indiana above mentioned, and was not engaged in any other business, and that its business operations were conducted according to its rights, powers, and privileges conferred by the charter granted it under said act. The act in question is found on pages 42 to 58 of the Acts of the Indiana General Assembly of 1925, and the declaration of policy in said act recites that:

"In order to promote, foster and encourage the intelligent and orderly marketing of agricultural products through co-operation; and to eliminate speculation and waste; and to make the distribution of agricultural products between producer and consumer as direct as can be efficiently done; and to stabilize the marketing of agricultural products, this act is passed.

"It is here recognized that agriculture is characterized by individual production in contrast to the group or factory system that characterizes other forms of industrial production, and that the ordinary form of corporate organization permits industrial groups to combine for the purpose of group production and the ensuing group marketing and that the public has an interest in permitting farmers to bring their industry to the high degree of efficiency and merchandising skill evidenced in the manufacturing industries; and that the public interest demands that the farmer be encouraged to

attain a superior and more direct system of marketing in the substitution of merchandising for the blind, unscientific and speculative selling of crops." Section 1.

The act further provides that:

"Associations organized hereunder shall be deemed 'nonprofit,' inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, but only for their members as producers. For the purposes of brevity and convenience this act may be indexed, referred to and cited as the 'Co-operative Marketing Act.'" Section 2.

This act is long and quite comprehensive, and is evidently the result of painstaking investigation on the part of the Legislature of the state of Indiana. It authorizes an association incorporated under it to engage in any activity in connection with the marketing, selling, preserving, harvesting, drying, processing, canning, packing, grading, storing, handling, or utilization of any agricultural products produced by its members. It may borrow money without limitation as to amount, and make advances to its members; may act as agent of any member or members. It may establish reserves and buy such real or personal property as may be necessary or convenient for conducting its operations. It is provided that such association may provide for the appointment of one or more directors by any public official or commission, and such directors need not be members or stockholders, but shall represent primarily the interests of the general public in such association.

It is clear that, under the articles of association and the statute of the state of Indiana, the defendant, Dairy Marketing Association of Ft. Wayne, Inc., is a nonstock, nonprofit, co-operative corporation. The question, then, for decision, is whether such nonstock, nonprofit, co-operative corporation is amenable to the bankruptcy laws of the United States relating to involuntary bankruptcy. The court has been greatly assisted in investigating this matter by the very able briefs filed by counsel on both sides of the case, but the question for decision has not been, and is not, an easy one.

The Bankruptcy Act of 1898 (section 4, amended in 1903 [32 Stat. 797, § 3]), provided that all corporations engaged in manufacturing, trading, printing, publishing, mining, or mercantile pursuits were subject to bankruptcy. In 1910 the Bankruptcy Act was changed and amended (36 Stat. 839, § 4 [Comp. St. § 9588]), and the lan-

guage used in the act of 1867 (14 Stat. 517) was restored, so that now we find that corporations subject to involuntary bankruptcy are "moneyed, business, or commercial corporations" except a municipal, railroad insurance, or banking corporation. These three adjectives, "moneyed, business, or commercial corporations," are found in the present statute, and were used in the act of 1867, and as there seems to have been no direct and positive construction of the act of 1910, it is necessary to examine the decisions construing the act of 1867 in order to determine the meaning intended by Congress in the use of the words "moneyed, business, or commercial corporation."

[1] It is well to note in passing that the Bankruptcy Act is to be strictly construed with reference to the amenability of corporations to its provisions, and it cannot under any circumstances be held to include any corporation not clearly within the enumerated classes. In re New York, New Jersey Ice Lines, 147 F. 214, 77 C. C. A. 440.

It is urged by plaintiff that defendant corporation bought and sold milk cans and other articles of personal property from both members and nonmembers, and for this reason it should be held to be a business or commercial corporation.

[2] It is clear that defendant was engaged chiefly in promoting, fostering, and encouraging the marketing of dairy products co-operatively, and that one of its principal objects was to prevent speculation, stabilize the market, and handle co-operatively and collectively the problems of dairy products. Where a corporation is engaged in two or more distinctive lines of business, one of which would subject it to the Bankruptcy Law, while the other would not, the decision of its amenability to the involuntary Bankruptcy Act will depend on the nature and character of that business which, under all the facts and circumstances, constitutes its chief or principal pursuit. Cate v. Connell, 173 F. 445, 97 C. C. A. 647. In re Interstate Paving Co. (D. C.) 171 F. 604. There is no difficulty in determining that the defendant association was not engaged, as its chief business, in any other lines than those permitted and outlined in the Co-operative Marketing Act of Indiana.

[3] Defendant association was not a "moneyed corporation," as that phrase was used and intended by the act of Congress amending the Bankruptcy Law. Was it, then, a business or commercial corporation,

within the meaning of those words as used and intended in the amendment of 1910 of the Bankruptcy Act?

Bump on Bankruptcy (9th Ed.) p. 778, defines a business corporation as one which transacts business for gain as its chief and ultimate purpose.

In the case of In re R. L. Radke Co., in the District Court of California, decided in 1911, the court said: "We cannot do otherwise than follow the definition of the terms 'moneyed,' 'business,' and 'commercial,' which were adopted and approved by the federal courts when called upon to interpret the earlier statute." And the court in this case holds that a corporation transacting business for gain as its chief and ultimate purpose is a business corporation. In re R. L. Radke Co. (D. C.) 193 F. 735.

In view of these decisions, it would seem that Congress intended, when it used the words "moneyed, business, or commercial corporations," to include such corporations as were engaged in enterprises for profit, and did not intend to include charitable, fraternal, educational, literary, or nonprofit co-operative marketing associations, none of which are conducted for profit to themselves or to their members as such.

As indicative of the intention of Congress, but not as decisive of the question at issue, the fact that the Income Tax Act of 1925 (Comp. St. Supp. 1925, § 6336⅙nn) exempted co-operative associations from the operation of the Income Tax Law, and did not require them to make returns, is worthy of consideration, and is helpful in an effort to arrive at the intention of Congress in the use of the language of the Bankruptcy Act. It seems clear that Congress, in the enactment of the Income Tax Act, did not consider co-operative marketing associations as "moneyed, business, or commercial corporations," for the reason that they are considered nonprofit associations, as distinguished from private commercial associations organized for profit.

It is well in this connection to remember that the Indiana statute, under which defendant corporation was organized and operated, provides that all associations organized under the act shall be deemed " 'nonprofit,' inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, but only for their members as producers." Acts Ind. 1925, c. 20, § 2. The character of a corporation or association must be determined from its articles of incorporation and the statute authorizing its formation. As counsel for defense in their brief very well say: "If the Supreme Court of Indiana were called upon to decide whether or not this co-operative Dairy Marketing Association of Ft. Wayne, Inc., was a corporation organized for pecuniary profit, any lawyer could absolutely anticipate its decision."

The case of Nebraska Wheat Growers' Association v. Norquest et al. (Neb.) 204 N. W. 798, decided July 1, 1925, while not deciding the question under consideration here, is interesting and very instructive, as showing the tendency of the courts in cases of this nature. In this case it is held that the Nebraska Wheat Growers' Association, very similar in its organization and operation to the defendant association in the case at bar, was "organized for mutual help, * * * without capital stock, * * * not conducted for profit," but was a "simple, business-like scheme * * * to advantageously handle and market" the products of producers "without encroachment upon the rights of others."

The Dairy Marketing Association of Ft. Wayne, Inc., being a nonstock, nonprofit, co-operative marketing association, it is neither a "moneyed," "business," nor "commercial" association, under the construction and interpretation given those words by the courts, and is not amenable to the involuntary Bankruptcy Act of 1910, and therefore not subject to an involuntary bankruptcy proceeding.

For the above reasons, the petition for involuntary bankruptcy is dismissed.